Bryce K. Kunimoto, Esq.
Nevada Bar No. 7781
Robert J. Cassity, Esq.
Nevada Bar No. 9779
David J. Freeman, Esq.
Nevada Bar No. 10045
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 222-2542
Fax:   (702) 669-4650
Email: bkunimoto@hollandhart.com
       bcassity@hollandhart.com
       dfreeman@hollandhart.com

*Attorneys for Defendants Blue Skies Group, LLC; Blue Skies Aviation Group Holdings LLC; Stephen Will Ashcroft; and Robert Caputo*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMIE PETTY,<br><br>Plaintiff,<br><br>v.<br><br>BLUE SKIES GROUP, LLC; BLUE SKIES AVIATION GROUP HOLDINGS LLC; STEPHEN WILL ASHCROFT; AND ROBERT CAPUTO,<br><br>Defendants. | CASE NO.: 2:18-cv-00352-RFB-GWF<br><br>**MOTION TO STAY OR DISMISS AND COMPEL ARBITRATION** |

Defendants Blue Skies Group, LLC ("BSG"), Blue Skies Aviation Group Holdings LLC ("BSA"), Stephen Will Ashcroft ("Mr. Ashcroft") and Robert Caputo ("Mr. Caputo") (collectively, the "Defendants"), by and through their attorneys of record, Holland & Hart LLP, hereby moves this Court to issue an order to stay or dismiss this action without prejudice and to compel arbitration of the claims asserted in the *Complaint* filed by Plaintiff Jamie Petty ("Mr. Petty" or "Plaintiff") on or about February 26, 2018 (ECF No. 1).

/ / /

/ / /

/ / /

1

This Motion is made and based upon the attached Memorandum of Points and Authorities, the exhibits, declarations, and transcripts attached hereto, and any oral argument allowed by the Court at any hearing on this Motion.

DATED this 31st day of May, 2018.

*/s/ David Freeman*
Bryce K. Kunimoto, Esq.
Robert J. Cassity, Esq.
David J. Freeman, Esq.
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*Attorneys for Defendants Blue Skies Group, LLC; Blue Skies Aviation Group Holdings LLC; Stephen Will Ashcroft; and Robert Caputo*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY OR DISMISS AND COMPEL ARBITRATION**

**I.**

**INTRODUCTION**

This lawsuit constitutes a retaliatory response to the proper termination of a business relationship that was originally procured and ultimately destroyed as a result of Plaintiff's deceit, unprofessionalism and incompetence. Defendants offer a fractional ownership in BSA, which grants its members access to its private fleet of aircraft for the purpose of providing affordable, transparent and safe travel to its co-owners. Defendants created their business plans, conducted due diligence with respect to the plans and prepared their financial projections with the assistance of their marketing advisors in 2016.

In the spring of 2017, Plaintiff was introduced to Defendants through their long-time marketing advisors as someone who could potentially assist in Defendants' efforts to raise capital investments in their Blue Skies project. Plaintiff touted himself as being an accomplished international businessman, an "Authorized Representative" of the Financial Conduct Authority (the United Kingdom's conduct and prudential regulator for financial services firms and financial markets), and as having raised over £60,000,000 as the investment

director for a certain private equity fund. Unbeknownst to Defendants, the business acumen and experience Plaintiff touted was simply made-up nonsense. Nevertheless, based on these misrepresentation and others, Defendants and Plaintiff began a business relationship with the expectation that Plaintiff would secure the necessary capital investments for the Blue Skies project through his professedly vast network.

Plaintiff's misrepresentations continued long after the business relationship had been established with Defendants. Messrs. Ashcroft and Caputo funded expensive international travel for several individuals, including Plaintiff, whom Plaintiff falsely represented were interested in investing their monies with Defendants. Plaintiff also misrepresented the extent of his purported ownership interest in a Mercedes-Benz SSK (the "SSK"), a 20th century roadster, which he claimed was worth $20 million, and his purported intention to invest the proceeds from the sale of the SSK into Defendants' project. Plaintiff also misled Defendants into believing he had procured a bond deal that would provide the requisite financing of the Blue Skies project.

In the fall of 2017, Plaintiff and Messrs. Ashcroft and Caputo entered into the *Operating Agreement of Blue Skies Aviation Group Holdings, LLC* (the "Operating Agreement") wherein Plaintiff received a 20% interest in BSA. The Operating Agreement sets forth all of the promises, agreements and understanding of the parties with respect to BSA, BSA's business and its property. By executing the Operating Agreement, Plaintiff acknowledged there were no promises or representations among the parties other than what was set forth in the Operating Agreement.

With the Operating Agreement in place, Defendants were finally able to procure financing, despite Plaintiff's subterfuge. Plaintiff placed the financing in jeopardy by communicating sensitive financial information to third parties. Plaintiff's lack of discretion not only placed Defendants' access to financing in harm's way, but also increased their exposure under a nondisclosure agreement. Due to his lack of diligence and professionalism, Plaintiff was removed from all financial communications at the request of Defendants' investor despite his supposed credentials. Nevertheless, Plaintiff brazenly demanded a portion of the finder's

3

fee, without informing Messrs. Ashcroft and Caputo, which constituted the last deceptive straw that ultimately lead to the termination of the business relationship.

Plaintiff was repeatedly warned that his conduct was unacceptable and exposed Defendants to potential liability. Plaintiff was further advised that a continuation of his behavior would result in the termination of the relationship. Plaintiff promised it "[w]on't happen again." Despite this recurring promise, Plaintiff's improper conduct repeated itself over, and over, and over again until the business relationship had to be terminated.

In retaliation of Defendants termination of the business relationship, Plaintiff filed the instant lawsuit claiming Defendants breached the Operating Agreement by attempting to divest Plaintiff of his membership interest in BSA. As a member of BSA, however, Plaintiff gave his express consent to arbitrate any action or proceeding "seeking to enforce any provision of" or "arising out of" the Operating Agreement. Plaintiff cannot assert claims arising out of the Operating Agreement, but at the same time ignore his obligations under the arbitration provision. As a result, Plaintiff's claims, which are subject to this valid and enforceable arbitration provision, must be dismissed or, alternatively, stayed in this forum until the validity of the claims is determined by an arbitrator as expressly agreed to by Plaintiff in the Operating Agreement.

## II.

## STATEMENT OF FACTS[1]

Plaintiff alleges that, in January 2017, an executive at a marketing firm contacted Plaintiff regarding an opportunity in the private jet membership market. *See* ECF No. 1 at ¶ 18. As a result, Plaintiff was introduced to Messrs. Ashcroft and Caputo and was purportedly "instrumental" in the expansion of Messrs. Ashcroft and Caputo's original business concept of providing their members access to a private fleet of available aircraft at a lower passenger cost. *See id.* at ¶¶ 18-22. Plaintiff alleges he was tasked with the responsibility of securing funding

---

[1] For the purposes of this motion only, the factual allegations are taken as true as they are stated in the Complaint. Defendants do not admit to any of the allegations by this Motion and reserve the right to challenge any of the allegations at any further stage of this litigation.

4

for the project and "helped introduce" the investment banking advisor that ultimately undertook to provide the requisite capital investment in the project. *See id.* at ¶¶ 23-25.

At some point during the summer of 2017, Plaintiff contends Messrs. Ashcroft and Caputo offered to make Plaintiff a full equity partner in the contemplated entity that would operate the project, would be employed as the entity's Chief Commercial Officer and to relocate Plaintiff and his family from London to New York City. *See* ECF No. 1 at ¶¶ 26. Nevertheless, on November 21, 2017, Plaintiff alleges that he executed the *Operating Agreement of Blue Skies Aviation Group Holdings, LLC* (the "Operating Agreement"), which unequivocally stated that Plaintiff had only a 20% interest in the BSA. *See id.* at ¶¶ 30-32.

On or about February 26, 2018, Plaintiff filed a *Complaint* (ECF. No. 1) against Defendants wherein he alleged (1) Defendants breached the Operating Agreement by attempting to abrogate the agreement to divest Plaintiff of his rights and interests thereunder (*see id.* at ¶¶ 44-48), (2) Defendants fraudulently induced Plaintiff to enter into the Operating Agreement and to continue to provide services by implying that a subsequent contract would document Plaintiff's purported expectation of receiving a 33% equity stake (*see id.* at ¶¶ 49-55), (3) Messrs. Ashcroft and Caputo misrepresented to Plaintiff that he would participate as a full partner in BSA despite never intending to vest such ownership interest in Plaintiff (*see id.* at ¶¶ 56-63), (4) Messrs. Ashcroft and Caputo breached an intended partnership agreement when they attempted to strip Plaintiff of his 33% ownership interest (*see id.* at ¶¶ 64-68), (5) Messrs. Ashcroft and Caputo breached fiduciary duties they owed to Plaintiff as members of BSA by failing to safeguard Plaintiff's ownership interest (*see id.* at ¶¶ 69-72) and (6) Plaintiff is entitled to a declaration that the intended partnership agreement is enforceable and a declaration as to Plaintiff's rights thereunder (*see id.* at ¶¶ 73-77).

When Plaintiff became a member of BSA, he agreed to—and Defendants provided him a membership interest in BSA in reliance upon—the terms and conditions of the Operating Agreement. ECF No. 1 at ¶ 45 ("One or about November 21, 2017, Defendants Ashcroft and Caputo and Mr. Petty entered into a valid and enforceable contract titled Operating Agreement of Blue Skies Aviation Group, LLC.") A copy of the Operating Agreement is attached hereto as

5

**Exhibit "A."** The Operating Agreement contains a lengthy arbitration provision which provided as follows:

> Section 15.5. *Resolution of Disputes.* ***Any action or proceeding seeking to enforce any provision of, or based upon any right arising out of, this Agreement shall be settled by binding arbitration*** by a panel of three (3) arbitrators]in accordance with the Commercial Arbitration Rules of the American Arbitration Association and governed by the laws of the State of Nevada (without regard to the choice of law rules or principles of that jurisdiction), modified as follows: (a) the arbitrators (as selected in the following paragraph), shall be bound by the terms of this Agreement and, to the extent such dispute arises from terms not addressed in this Agreement, the panel shall not fashion its own remedies, but shall render decisions and remedies most consistent with the intent and terms therewith, and otherwise in the most equitable manner from positions presented by the parties; (b) each party shall be given one day to present their case; and (c) the panel shall have two weeks, from the presentation of each parties case, to ender its decision on the matters presented. Judgment upon the award may be entered in any court and shall be entered in the courts located in the State of Nevada, County of Broward, and all the parties hereto hereby consent to submit to the jurisdiction of such courts and expressly waive any objections or defense based upon lack of personal jurisdiction or venue.
>
> Each of the plaintiff and defendant party to the arbitration shall select one (1) arbitrator (or where multiple plaintiffs and/or defendants exist, one (1) arbitrator shall be chosen collectively by such parties comprising the plaintiffs and one (1) arbitrator shall be chosen collectively by those parties comprising the defendants) and then the one (1) arbitrators shall mutually agree upon the third arbitrator. Where no agreement can be reached on the selection of either a third arbitrator or an arbitrator to be named by either a group of plaintiffs or a group of defendants, any implicated party may apply to a judge of the courts of the State of Nevada, County of Broward, to name an arbitrator. The location of any arbitration shall be Broward County, in the State of Nevada. Each party consents and agrees that Process in any such action or proceeding may be served on any party anywhere in the world.
>
> Each party shall bear their own legal expenses related to the foregoing arbitration, except that the Arbitrators may award reasonable legal fees to the prevailing party, to the extent the prevailing party.

Ex. A at 15.5 (emphasis added). Each of the claims asserted in the Complaint fall within the plain language of the arbitration provision because this is an action "seeking to enforce a[] provision of" and/or "arising out of" the Operating Agreement.

# III.

# LEGAL ANALYSIS

### A. Standard on a Motion to Compel Arbitration.

Plaintiff's claims, which are subject to a valid and enforceable arbitration provision, must be dismissed and litigated before the American Arbitration Association ("AAA").

The Federal Arbitration Act ("FAA") specifies that written agreements to arbitrate disputes in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Arriaga v. Cross County Bank,* 163 F. Supp. 2d 1189, 1191 (S.D. Cal. 2001) (the "enforceability of arbitration agreements in contracts involving interstate commerce are governed by the FAA") (citing 9 U.S.C. § 1). Arbitration agreements are enforced under sections 3 and 4 of the FAA, which provide "two parallel devices for enforcing an arbitration agreement." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 3 gives courts the power to provide "a stay of litigation in any case raising a dispute referable to arbitration," while section 4 empowers courts to provide "an affirmative order to engage in arbitration." *Id.;* 9 U.S.C. §§ 3–4. Accordingly, "[i]f the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam–Ko Bio–Pharm Trading Co. Ltd–Australasia v. Mayne Pharma (USA),* 560 F.3d 935, 940 (9th Cir. 2009) (citing *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1276–77 (9th Cir.2006)) (*en banc*); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir.1988) (citing Ninth Circuit precedent, "[t]his court held that 9 U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause.").

"The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (internal quotations omitted). The Supreme Court has interpreted the FAA to be a declaration of policy favoring arbitration. *Moses H. Cone Mem 'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (holding that Section 2 of the FAA "is a congressional declaration

of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"); *accord Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 91 (2000) (holding that an attempt to invalidate an agreement to arbitrate "would undermine the liberal federal policy favoring arbitration agreements") (citations and quotations omitted); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991) (holding that provisions of the FAA "manifest a liberal federal policy favoring arbitration agreements") (citations and quotations omitted); *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984) (by enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration"). Thus, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

A court's discretion for compelling arbitration is thus limited to a two-step process of determining "(1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564-65 (9th Cir. 2014) (citing *Chiron Corp. v. Orth Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). However, given the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25; *accord Int'l Assoc. Firefighters v. City of Las Vegas,* 104 Nev. 615, 618, 764 P.2d 478, 480 (1988) ("Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration."). The party resisting arbitration bears the burden of proving that the claims are not covered under the arbitration agreement. *Royer v. Baytech Corp.*, 3:11-CV-00833-LRH, 2012 WL 3231027, at *2–3 (D. Nev. Aug. 3, 2012) (citing *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).

**B.**   ***This Action Must Be Stayed or Dismissed Because the Claims Asserted Against Defendants Are Subject to A Valid and Enforceable Arbitration Provision.***

**1.**   **The Operating Agreement Contains a Valid Agreement to Arbitrate.**

The parties expressly and unambiguously agreed in the Operating Agreement to submit to the AAA for resolution of any action or proceeding "arising out of" the Operating Agreement. Ex. A at § 15.5. Under Nevada law,[2] the issue of "[w]hether a dispute is arbitrable is essentially a question of construction of a contract." *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, 116 Nev. 405, 410, 996 P.2d 903, 907 (2000) (*quoting Clark Co. Public Employees v. Pearson*, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990)). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).

In the Complaint, Plaintiff alleges that he entered into a valid and enforceable Operating Agreement with Messrs. Ashcroft and Caputo regarding BSA. *See* ECF No. 1 at ¶ 45. By executing the Operating Agreement, Plaintiff acknowledged that arbitration would be the sole and exclusive procedure for the resolution of any action or proceeding between the members of BSA "arising out of" the Operating Agreement. Ex. A at § 15.5. The arbitration provision is enforceable under Nevada law because it is supported by adequate consideration, including the parties reciprocal promise to arbitrate all disputes "arising out of" the Operating Agreement. *See id.* Accordingly, the Operating Agreement represents the existence of a valid agreement to arbitrate between the parties.

**2.**   **The Claims Are Within the Scope of the Arbitration Provision.**

An arbitration clause that covers matters "arising out of" or "relating to" a contract "constitute[s] the broadest language the parties could reasonably use to subject their disputes to [arbitration]." *Royer*, 2012 WL 3231027, at *3 (*citing State ex rel. Masto v. Second Judicial*

---

[2] In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state—law principles that govern the formation of contracts." *Nguyen*, 763 F.3d at 1175 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In this case, the parties agree that the validity of the arbitration agreement is governed by the laws of the State of Nevada, as specified by the Operating Agreement's governing law provision. *See* Ex. A at § 15.3 ("It is the intention of the parties that all questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of Nevada.").

*Dist. Court ex rel. County of Washoe,* 125 Nev. 37, 45 n. 5, 199 P.3d 828, 833 n. 5 (Nev.2009) (quoting *Fleet Tire Serv. v. Oliver Rubber,* 118 F.3d 619, 621 (8th Cir.1997))). Under such language, an issue need only "touch matters" covered by the contract to be subject to the arbitration clause. *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 720 (9th Cir.1999). "[T]he question is whether the wrongful conduct alleged in the complaint is related to the agreement that contains [the arbitration clause]." *Law Offices of Bradley J. Hofland, P.C. v. McFarling,* No. 2:06–cv–00898–BES–LRL, 2007 WL 1074096, at *4 (D. Nev. Apr.9, 2007).

The arbitration provision in the Operating Agreement is valid, enforceable, and irrevocable, and it is beyond question that the claims Plaintiff has asserted in this lawsuit involve a dispute "arising out of" and this action "seek[s] to enforce a[] provision of" the Operating Agreement. Federal courts applying the FAA have long recognized that such a clause requires arbitration of any claims that "touch matters" covered by the agreement containing the clause. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (compelling arbitration under "broad arbitration clause" that provided for arbitration of claims "arising out of or relating to this Agreement"); *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625-26 (3d Cir. 2003) (broad arbitration clause requires arbitration of any claims whose underlying allegations "touch matters" covered by the agreement).

To determine whether Plaintiff's claims fall within the bounds of the Operating Agreement's broad arbitration clause, the court must analyze the factual allegations underlying each claim. Plaintiffs' First, Second and Fifth Causes of Action for breach of contract, fraudulent inducement and breach of fiduciary duty reference and directly rely upon the Operating Agreement:

- On or about November 21, 2017, Defendants Ashcroft and Caputo and Mr. Petty entered into a ***valid and enforceable contract titled Operating Agreement*** of Blue Skies Aviation Group Holdings, LLC.

- At all times relevant to this Complaint, Mr. Petty performed under the terms of the parties' agreement.

- Defendants ***breached the agreement*** on or about February 5, 2018, by attempting to abrogate the contract and divest Mr. Petty of his rights and interests thereunder.

10

*See* ECF No. 1 at ¶¶ 45-47 (breach of contract).

- On or about November 21, 2017, Defendant Ashcroft ***forwarded a contract entitled Operating Agreement*** of Blue Skies Aviation Group Holdings, LLC. The putative contract ***included provisions awarding twenty percent*** of the outstanding shares to Mr. Petty. Defendant Ashcroft assured Mr. Petty in writing that the contract was "purely a place holder" for Blues Skies' investment managers, implying that a subsequent contract would document the parties' equity expectations, with Mr. Petty holding a thirty-three percent equity stake. Mr. Petty and Defendant Caputo subsequently signed the agreement.

- As demonstrated above, Defendant Ashcroft's ***representations were false*** and Defendants knew they were false at the time of their making. Notwithstanding their representations, Defendants never vested or intended to vest such ownership interest in Plaintiff.

- In making the representations outlined above, Defendants intended to ***induce Mr. Petty to enter into the Operating Agreement*** and to continue to provide valuable services to Blue Skies, including but not limited to contributing to the development of a viable business plan and securing necessary funding.

*See id.* at ¶¶ 51-53 (fraudulent inducement).

- As partners in the Blue Skies enterprise and ***members in Blue Skies Aviation Group Holdings, LLC***, Defendants Ashcroft and Caputo owed a fiduciary duty to Mr. Petty.

- Defendants Ashcroft and Caputo breached their fiduciary duty to Mr. Petty by ***failing to safeguard Mr. Petty's ownership interest*** in Blue Skies and by attempting to unilaterally rescind such ownership interest.

*See id.* at ¶¶ 70-71 (breach of fiduciary duty).

Because each of the claims, as alleged in the Complaint, directly "arise out of" the Operating Agreement, such claims are clearly within the scope of the arbitration provision and must be dismissed or, alternatively, stayed pending arbitration.

Plaintiffs' Third, Fourth and Sixth Causes of Action for fraud, breach of partnership agreement and declaratory relief do not directly reference the Operating Agreement. However, each of the claims is contingent upon whether the arbitrator will enforce Plaintiff's 20% interest in BSA, as reflected by the issuance of the 200,000 Series A-1 Shares in the provisions of the

11

Operating Agreement (*see* p. 4). Because the Operating Agreement clearly mandates arbitration of "any action or proceeding seeking to enforce any provision" (*see* Ex. A at § 15.5) contained in the Operating Agreement and Defendants' seek enforcement of the membership provisions contained in the Operating Agreement as a defense to Plaintiff's claims, the claims must be dismissed or, alternatively, stayed pending arbitration.

Furthermore, to the extent there is any confusion regarding the arbitrability of these claims, the Operating Agreement also firmly establishes that "[a]ny action or proceeding seeking to enforce any provision of . . . this Agreement," ***including the arbitration provision***, "shall be settled by binding arbitration . . . ." Ex. A at § 15.5. Thus, questions about what claims are subject to the arbitration provision must also be resolved by the arbitrator.

Plaintiff's claims fall within the plain language of the arbitration provision because this is an action "seeking to enforce a[] provision of" and are "arising out of" the Operating Agreement. Each claim meets the federal standard applied to broad arbitration clauses, which requires arbitration of any claims that "touch matters" covered by the agreement containing a broad arbitration provision. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622, n.13 (1985). Because a valid agreement to arbitrate exists and the arbitration provision contained therein encompasses the contract claims at issue, this Court should dismiss the claims or, alternatively, stay this action with respect to said claims to allow the arbitration to proceed.

## IV.

## CONCLUSION

Because there is no dispute that Plaintiff signed the Operating Agreement or that the claims asserted in the Complaint seek to enforce or "arise out of" the Operating Agreement, this Court should dismiss the case and compel Plaintiff to bring his claims before the arbitration panel he agreed to do in the Operating Agreement. Alternatively, if the Court is not inclined to

/ / /

/ / /

/ / /

dismiss the case outright, the lawsuit must be stayed until the validity and applicability of the arbitration provision has been determined by the arbitrator pursuant to 9 U.S.C. §§ 3.

DATED this 31st day of May, 2018.

/s/ David Freeman
Bryce K. Kunimoto, Esq.
Robert J. Cassity, Esq.
David J. Freeman, Esq.
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*Attorneys for Defendants Blue Skies Group, LLC; Blue Skies Aviation Group Holdings LLC; Stephen Will Ashcroft; and Robert Caputo*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of May, 2018, a true and correct copy of the foregoing **MOTION TO STAY OR DISMISS AND COMPEL ARBITRATION** was served on counsel through the Court's electronic service system as follows:

**Electronic Service:**

Don Springmeyer, Esq.
Daniel Bravo, Esq.
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
dspringmeyer@wrslawyers.com
dbravo@wrslawyers.com

*Attorneys for Plaintiff Jamie Petty*

      /s/ Yalonda Dekle
      An employee of Holland & Hart LLP

11010387_5

## INDEX OF EXHIBITS TO MOTION TO STAY OR DISMISS AND COMPEL ARBITRATION

| Exhibit No. | Document | Page Nos. |
|---|---|---|
| A | The Operating Agreement | 1 - 41 |